FRANK C. KELLER

*v.*

WILL E. COMAN.

*Filed at Ottawa June 13, 1896.*

1. REDEMPTION—*assignment of certificate of sale does not operate as a redemption.* An assignment, within the time allowed for redemption, of a master's certificate of sale, to the owner of the equity, does not operate as a redemption, though regularly recorded, and expressed to be "for the purpose of canceling said certificate and satisfying the decree of sale."

2. ESTOPPEL—*of vendor to redeem from master's sale as against vendee.* A beneficial owner of land who sells the same and causes warranty deed to be made to his vendee, and also causes a certificate of sale of the property for a mechanic's lien to be transferred to such vendee by assignment expressed to be "for the purpose of canceling said certificate and satisfying the decree of sale," is estopped to afterwards redeem the property from such sale as a judgment creditor of the party who held the legal title.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

F. A. WOODBURY, for appellant.

KERR & BARR, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was a bill brought by Will E. Coman, against Frank C. Keller, to set aside a certain certificate of redemption filed by the sheriff, and to vacate and set aside a sheriff's deed, and a deed made by Mills to appellant, purporting to convey certain property therein named. To the amended bill Keller interposed a demurrer, which the court overruled and entered a decree in favor of the complainant, as prayed for in the bill.

The bill contains numerous allegations, but for the purpose of disposing of this case it will not be necessary to set out all the allegations, but only the principal facts alleged in the bill and relied upon to authorize the decree.

The facts set out are, in substance, as follows: In April, 1891, Robert and Samuel Anderson owned the lot in question in this suit, lot 23, block 14, in Douglas Park addition to Chicago, and erected a building on it. Schroth & Ahrens, who furnished the lumber, filed a bill for a mechanic's lien. The Andersons conveyed to one Black, and Black conveyed to Palmer. Palmer became a party to the mechanic's lien suit, *pendente lite,* and afterwards conveyed to the appellee, Coman. After Coman acquired the title the property was sold under a decree in the mechanic's lien suit to Schroth & Ahrens, who assigned the certificate to one Smith, and Smith assigned to appellee. The assignment of certificate by Smith was as follows:

"For value received I hereby sell and assign the within certificate, so far as the same refers to lot 23 therein described, to Will E. Coman, the present owner of lot 23, for the purpose of canceling said certificate and satisfying the decree of sale.

"CHICAGO, *July 18, 1895.*                ROBERT H. SMITH."

This assignment was made within the time allowed by law to defendants for redemption under the sale in the decree in the mechanic's lien case.

The amended bill contained the following allegations: That the petition for mechanic's lien by Schroth & Ahrens was filed March 8, 1892; that the only defendants were

Robert J. Anderson and Samuel U. Anderson, Charles A. Sawyer, David A. Black, and the unknown owners of the notes secured by trust deed to said Sawyer; that on the 15th day of May, 1893, George W. Palmer and Ellen J. Culver filed a petition, saying Black sold by warranty deed to Palmer and Culver September 1, 1892, and praying to be made parties and allowed to defend, which was so ordered; that prior to the deed to Palmer the Andersons had conveyed all their interest to Black; that a decree of sale was entered December 9, 1893, which finds that Schroth & Ahrens made a contract with the Andersons for material for the buildings aforesaid; that the Andersons were then the owners in fee simple; that Schroth & Ahrens furnished material to the value of $977.14; that they filed their statement of account in the clerk's office; that Black purchased the premises from the Andersons; that Culver and Palmer were purchasers *pendente lite;* that petitioners were entitled to a mechanic's lien, and it was ordered that the Andersons pay the amount of the decree, with interest, within five days, and that if they or some other defendants did not pay it the premises should be sold by the master; that in case of deficiency, complainants should have the right to apply for a deficiency decree against the Andersons; that Palmer did not become a party to the mechanic's lien proceeding until September 1, 1892, and that he was not personally liable to Schroth & Ahrens.

Various errors have been assigned and a number of questions have been discussed in the argument in reference to the allegations of the bill, which, as we understand the record, do not involve the merits of the case. These questions, although they may be interesting and might be regarded of importance in a proper case, we do not deem it necessary to consider. If the material allegations of the bill which are admitted by the demurrer to be true are sufficient to authorize the decree rendered by the court, the fact that the bill may contain some imma-

terial averments is of but little importance. The record, as we understand it, presents but two questions of importance: First, whether the assignment of the certificate of purchase set out in the bill operated as a redemption and canceled the certificate; and second, if the certificate of purchase was not canceled, had Mills the right, as a judgment creditor, to redeem from the sale, and rely upon his title under the sale in a court of equity.

Where lands have been sold under an execution or decree of court the statute provides the mode of redemption. When the defendant in the execution or decree, or person interested in the premises through or under the defendant, desires to redeem, section 18 of chapter 77 of the Revised Statutes provides he may, within twelve months from the date of sale, redeem by paying to the purchaser, his executors or assigns, or to the officer who made the sale or his successor in office, the sum of money for which the premises sold, with interest at the rate of six per cent per annum from the time of sale, "whereupon such sale and the certificate shall be null and void." Section 19 provides that in all cases of redemption "it shall be the duty of the purchaser, sheriff, master in chancery, or other officer from whom said redemption takes place, to make out an instrument, in writing, under his hand and seal, evidencing said redemption, which shall be recorded in the recorder's office of the proper county, which recording shall be paid for by the party redeeming."

The foregoing is the mode pointed out by the statute, and this court has held in a number of cases that an assignment of the certificate of purchase to the owner of the equity of redemption by the person who purchased the lands will not operate as a redemption. (*McRoberts* v. *Conover*, 71 Ill. 524; *Lloyd* v. *Karnes*, 45 id. 62; *Boynton* v. *Pierce*, 151 id. 197; *Moore* v. *Hopkins*, 93 id. 505.) In the discussion of the question in the case last cited it is among other things said (p. 509): "The only thing suggested against it is, that prior to the expiration of twelve months

from the sale of the property on the execution issued on the judgment in favor of Gallup against Chase, complainant had purchased the certificate of sale from Gallup and took an assignment of it to himself, and the argument is, that any payment of the Gallup claim, without reference to the mode of doing it, relieved the property from the lien which the judgment created upon it. The former decisions of this court present a full and complete answer to the position taken, and it is not necessary now to restate the reasons that led to the conclusions reached." In the case of *Herdman* v. *Cooper*, 138 Ill. 583, it was said (p. 588): "The right of redemption from sale on judgment and decree of foreclosure is purely statutory, and it can not be exercised except within the periods of time and in the manner substantially as pointed out in the statute."

Under the law as established in this State it is clear if Will E. Coman, the appellee, had gone to Schroth & Ahrens, the purchasers of the lot under the mechanic's lien decree, and paid them the redemption money, and had taken an assignment of the certificate of purchase instead of a certificate of redemption, the transaction could not be regarded as a redemption. But that was not done in this case. Here, as appears from the allegations of the bill, Mills owned the property, the bare legal title resting in Palmer. Mills proposed to sell or trade the property to Coman, who refused to trade without the removal of the Schroth & Ahrens claim for lien. Mills proposed to secure a policy from some guaranty company, guaranteeing the title against the lien. Appellee agreed to this and Mills gave a bond and collateral security to the guaranty company to indemnify it from loss in guaranteeing against said lien, and the company notified appellee that they would issue a policy on application. Thereupon appellee completed the trade, and received on July 10, 1893, a warranty deed from Palmer, and thereupon took possession of the premises and has held possession ever since. On July 26, 1893, the guar-

anty company issued its policy to appellee as agreed upon, which guaranteed against said mechanic's lien. In December, 1893, after the purchase, a decree of sale was entered in the mechanic's lien suit against the lot in question and another lot, and on July 18, 1894, both lots were sold to Schroth & Ahrens for $1245.43 by a master in chancery, who issued a certificate of sale. It further appears from the allegations of the bill, that on the 25th of July, 1894, Mills bought the certificate of sale from Schroth & Ahrens, and took an assignment to Robert H. Smith; that afterward, on July 25, 1895, the holder of the certificate acknowledged the receipt of $661.73 as paid by one Ella J. Culver to redeem the other of the two lots but not lot 23, and that the same was received in full redemption of said other lot. It also appears from the bill that Robert H. Smith was the attorney of Mills, and that the assignment was made for the benefit of Mills. It also appears from the allegations of the bill, that on or about the 18th day of July, 1895, the certificate of purchase was in the possession of the guaranty company as a protection against the policy they had issued, and that the company and Mills conferred, and, with the assent of Mills, the attorney, Smith, entered on the back of the certificate an assignment to appellee so far as the certificate related to lot 23, for the purpose of canceling the certificate of sale and satisfying the decree of sale, and the certificate so assigned was then filed for record in the recorder's office. After the certificate had passed to appellee, as appears from the bill, Mills caused an execution to be issued on a judgment Palmer had confessed in his favor, placed the same in the hands of the sheriff, and as a judgment creditor of Palmer redeemed from the sale under the mechanic's lien decree and caused the lot in question to be sold on August 20, 1895, and at the sale he became the purchaser and obtained a sheriff's deed.

Under the facts as stated the question presented is whether Mills, as a judgment creditor of Palmer, was en-

titled to redeem from the sale under the mechanic's lien decree, and thus obtain title to the premises as against appellee. We are inclined to think he could not. In the first place, Mills had sold the property to appellee and had caused it to be conveyed to him by warranty deed. It was his duty to clear the property from the decree and sale under the mechanic's lien decree, and when he took up the certificate of purchase through his attorney, Smith, and subsequently transferred it over to appellee for the purpose of canceling the certificate and satisfying the decree of sale, as is set forth in the assignment of the certificate, Mills was estopped from afterwards coming in as a judgment creditor and redeeming. When he bought the certificate it was his duty to cancel it, and after transferring it to appellee to be canceled and discharged he is estopped from treating the certificate as remaining in full force. When Mills held the assignment of the certificate out to appellee as a cancellation thereof, and appellee accepted it as such and placed it on record as a certificate of redemption, it would be a fraud upon him and his rights to allow Mills to shift his position and redeem, and under such redemption procure title to the property. Had a stranger to the transaction procured a judgment and redeemed, a different question would arise. The fact that Mills conveyed to Keller does not affect the question. The certificate and assignment thereon were on record, and appellee was in possession when Mills conveyed. He therefore took with notice, and acquired no greater title than Mills himself had.

If we are correct on this question of redemption it will not be necessary to consider the other question as to the right of a judgment creditor of Palmer, a grantee of the endorsers, to redeem.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*